# EXHIBIT A
State Court Records

Phillip Jones

vs.

Toyota Motor Credit Corporation et. al.

## SUMMONS

To the above-named Defendant/Respondent:

TransUnion LLC
RA: The Prentice-Hall Corporation System, Kansas, Inc.,
2900 SW Wanamaker Drive,
Suite 204,
Topeka, KS 66614

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

AJ Stecklein
748 Ann Ave
Kansas City, KS 66101

within 30 days after service of summons on you.



Clerk of the District Court

**Documents to be served with the Summons:**
PLE: Petition Petition

In the District Court of Wyandotte County, Kansas

Phillip A. Jones,

                              Plaintiff,

vs.

Toyota Motor Credit Corp,
Equifax, Inc.
TransUnion, LLC
Experian Information Services, Inc.

                              Defendants.

Case Number: _____

Chapter 60

## PETITION

COMES NOW Plaintiff, through counsel, and for Plaintiff's causes of action against Defendants states:

**I. PRELIMINARY STATEMENT**

This is an action for damages brought by an individual consumer against the Defendants for violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 *et seq*.

**II. JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 15 U.S.C. §1681p and 28 U.S.C. §1331.

2. Venue lies properly in this district under 28 U.S.C. §1391(b).

**III. PARTIES**

3. Plaintiff is a resident of Kansas.

4. Defendant Equifax Inc. is a Georgia corporation.

5. Defendant Equifax Inc. (Equifax) was and is engaged in the business of credit reporting, all within Kansas.

6. Defendant Trans Union LLC (Trans Union) is an Illinois corporation.

1

7. Defendant TransUnion is engaged in the business of credit reporting, all within Kansas.

8. Defendant Experian is an Ohio corporation.

9. Defendant Experian is engaged in the business of credit reporting, all within Kansas.

10. Defendant Toyota Motor Credit Corp, is a California corporation.

11. Defendant Toyota Motor Credit Corp leases automobiles.

## IV. FACTUAL ALLEGATIONS

12. On June 7, 2010, Plaintiff leased a 2010 Lexus RX350 vehicle from Superior Lexis, in Kansas City, Missouri.

13. The lease was assigned by Superior Lexus to Lexus Financial Services, a division Toyota Motor Credit.

14. The Contract, attached as Exhibit A, provides the following regarding early termination upon payment of any monthly payments due or unpaid, an Early Termination Charge equal to the difference between the "adjusted lease balance" and the fair market value, plus any other amounts due under the lease that are <u>not</u> charges for excessive wear and use and excess mileage.

15. Prior to May 14, 2013, Plaintiff exercised his right under the contract to terminate the lease by paying any monthly payments due or unpaid, an Early Termination Charge equal to the difference between the "adjusted lease balance" and the fair market value, plus any other amounts due under the lease that are <u>not</u> charges for excessive wear and use and excess mileage.

16. Despite that early termination under Exhibit A, Plaintiff received a letter on May

2

14, 2013, attached as Exhibit B.

17. Plaintiff contacted Defendant Toyota regarding the demand made in violation of the contract.

18. After repeated demands for the unlawful charges, Plaintiff received a letter from a collection agency demanding the payment of the excessive mileage fees. See Exhibit C.

19. Plaintiff made repeated complaints to Defendant Toyota and various law enforcement agencies.

20. In September 2014, Defendants Credit Reporting Agencies all reported the account both with a $1074.00 past due balance and that the account was in collections.

21. Because of the wrongful misreporting, Defendant was declined credit and his cost of existing credit and insurance increased.

22. On January 6, 2015, Plaintiff disputed the balance due with all three Defendant Credit Reporting Agencies and provided documentation.

23. Collection agencies continued to call Plaintiff to collect the debt not owed.

24. Plaintiff was forced to hire counsel to defend against the unlawful demand.

25. Defendants have been reporting and reinserting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties (the "inaccurate information").

26. The inaccurate information negatively reflects upon the Plaintiff, puts Plaintiff at risk of having some other person's bad credit reported on Plaintiff's credit report unbeknownst to Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

27. The inaccurate information comprises accounts and/or trade lines that inaccurately

reflect Plaintiff's credit history.

28. Defendants have been reporting the inaccurate information through issuing false and inaccurate credit information and consumer credit reports disseminated to various persons and credit grantors, both known and unknown.

**Count I – Violations of the FCRA – Defendants Equifax, TransUnion, and Experian**

Comes now Plaintiff and for Count I of his causes of action against the Defendants Equifax, TransUnion, and Experian states and alleges to the Court as follows:

29. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length.

30. Pertinent hereto, Defendants TransUnion, Experian and Equifax (hereinafter "Defendants Credit Reporting Agencies) were "persons" and "consumer reporting agencies" as those terms are defined by 15 U.S.C. §1681a(b) and (f).

31. Pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

32. Pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

33. Under 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax, Experian and TransUnion are liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on consumer reporting agencies of information under 15 U.S.C. §1681i wherein the agencies failed to use reasonable procedures to reinvestigate Plaintiff's disputes and, likewise, took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

34. The conduct of Defendants was a direct and proximate cause, and a substantial

factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff outlined more fully above and Defendants are liable to the Plaintiff for statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, and such further relief, as permitted by law.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants based on the following requested relief:

    a.    Statutory damages;

    b.    Actual damages;

    c.    Costs and reasonable attorney's fees under 15 U.S.C. §§1681n and 1681o; and

    d.    Such other and further relief as may be necessary, just and proper.

### Count II – Violations of the FCRA – Defendant Toyota Motor Credit Corp

Comes now Plaintiff and for Count II of his causes of action against Defendant Toyota Motor Credit Corp, states and alleges to the Court:

35.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length.

36.    Upon information and belief, the consumer reporting agencies reported to the Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), that Plaintiff disputed the foreclosure, delinquency and false credit reporting.

37.    Despite receipt of the same dispute several times, the Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), failed to respond with truthful information, failed to acknowledge the disputes and/or repeatedly reported the false, derogatory information to the consumer reporting agencies, all in violation of the Act.

38. According to the national consumer reporting agencies' reports, the Defendants, furnishers-subscribers, continued to falsely report about Plaintiff.

39. Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), has likewise willfully or, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), by failing to respond to reinvestigation requests and failing to supply accurate and truthful information.

40. Rather, Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), continued to report false and inaccurate information and failed to retract, delete and suppress false and inaccurate information they reported about the Plaintiff, as described more fully above.

41. Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), failed to investigate or reinvestigation regarding consumer credit data they reported and repeatedly re-reported about Plaintiff.

42. Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), failed to review all relevant and pertinent information provided to it by the consumer reporting agencies.

43. Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector), knew that their reporting and activities would (and will) damage Plaintiff and his ability to enjoy life and utilize the credit rating and reputation property rights she secured by honoring his obligations to all of his creditors.

44. Defendant Toyota Motor Credit Corp, furnisher-subscriber (creditor and collector) failed to acknowledge and respond with truthful information in response to Plaintiff's disputes and

to advise the consumer reporting agencies of receipt of such disputes and complaints regarding consumer credit data they had been reporting and re-reporting about Plaintiff.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants on the following requested relief:

    a.    Statutory damages;

    b.    Actual damages;

    c.    Costs and reasonable attorney's fees under 15 U.S.C. §§1681n and 1681o; and

    d.    Such other and further relief as may be necessary, just and proper.

## Count III – Violations of the KCPA– Defendant Toyota Motor Credit Corp

Comes now Plaintiff and for Count III of his causes of action against Defendant Toyota Motor Credit Corp, states and alleges to the Court:

45. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length.

46. Defendant Toyota Motor Credit Corporation has repeatedly misrepresented that Plaintiff owed money for excessive mileage and wear and tear in contradiction to the agreement.

47. Defendant Toyota Motor Credit Corporation has repeatedly demanded payment of Plaintiff for excessive mileage and wear and tear in contradiction to the agreement or engaged third parties to do so.

48. Plaintiff is a consumer as defined by K.S.A. §50-624(b) of the Kansas Consumer Protection Act (KCPA).

49. Defendant is a supplier of consumer products as defined by K.S.A. §50-624 and is subject to the requirements and provisions of the Kansas Consumer Protection Act.

50. The transaction is a consumer transaction as defined by K.S.A. §50-624(c).

51. K.S.A §50-626 provides that "(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction."

52. The above-described actions of Defendant violated section K.S.A. § 50-626(b)(1) by falsely making *representations made knowingly or with reason to know that: (A) property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have; and that (B) the supplier has a sponsorship, approval, status, affiliation or connection that the supplier does not have.*

53. K.S.A §50-627 provides that "(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction."

54. In determining whether an act or practice is unconscionable, the Court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:

> *(1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; and*
>
> *(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.*

55. Defendant's acts and omissions as described are deceptive under K.S.A. §50-626 and unconscionable under K.S.A. §50-627.

56. By the actions of Defendant, Plaintiff was aggrieved by the imposition of some burden or obligation that federal law alleviated.

57. Defendant's acts and omissions were willful and were part of a pattern of deceptive and unconscionable acts and practices.

58. Each act or omission described above constitutes a separate violation of the Kansas Consumer Protection Act, K.S.A. §50-623, et seq.

59. Because of Defendant's deceptive acts, is an aggrieved consumer, has been harmed, has incurred actual damages, and has incurred attorney fees.

WHEREFORE, Plaintiff respectfully prays for judgment on Count II against Defendant and requests the Court:

a. Award actual damages and restitution to Plaintiff;

b.	If actual damages are less than $10,000.00, award statutory damages in an amount determined by the Court up to $10,000.00 per violation under K.S.A. §50-634(b) and K.S.A. §50-636 for each and every violation of the Kansas Consumer Protection Act;

c.	Award costs and reasonable attorneys' fees, under K.S.A. §50-634; and

d.	Such other and further relief as the Court deems just and equitable.

## Jury Trial Demand

60. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ A.J. Stecklein

By: _____
A.J. Stecklein #16330
Michael H. Rapp #25702
Consumer Legal Clinic LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0147
Email: AJ@KCconsumerlawyer.com
          MR@KCconsumerlawyer.com
   Attorneys for Plaintiff

# CLOSED END MOTOR VEHICLE LEASE AGREEMENT

## 1. Parties

| LESSOR (DEALER) NAME AND ADDRESS | LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS | VEHICLE GARAGING ADDRESS, IF DIFFERENT THAN LESSEE'S BILLING ADDRESS |
|---|---|---|
| SUPERIOR LEXUS<br>300 WEST 104TH STREET<br>KANSAS CITY MO 64114 | ROBIN TERRELL JONES<br>PHILLIP A JONES<br>2211 N 64 ST<br>KANSAS CITY KS 66109 | N/A |
| PHONE NUMBER: (816)942-9000 | COUNTY: WYANDOTTE | COUNTY: |

Lease Date: [illegible]

This is a Lease for the Vehicle described below. The words "you," "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we," "us" and "our" refer to the Lessor, and after assignment, Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") and any subsequent assignee. By signing this Lease, you are leasing the Vehicle according to all of the terms of this Lease.

## 2. Description of Leased Vehicle

You are leasing from us, and received in satisfactory condition, the following Vehicle:

| New, Used or Demo | Year | Make | Model | Body Style | Vehicle Identification No. | Odometer Mileage |
|---|---|---|---|---|---|---|
| NEW | 2010 | LEXUS | RX 350 | 5 DR LIM | 2T2BK1BA6AC064317 | 39 |

Primary Use: ☐ Personal, Family or Household ☐ Business, Agricultural or Commercial

### FEDERAL CONSUMER LEASING ACT SEGREGATED DISCLOSURES

| 3. Amount Due at Lease Signing or Delivery | 4. Monthly Payments | 5. Other Charges (not part of your Monthly Payment) | 6. Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| (Itemized in Section 7 below)<br>$ 3500.00 | Your first Monthly Payment of $ 720.76 is due on 06/06/2010 followed by payments of $ 720.76 due on the 6th of each month. The total of your Monthly Payments is $ 25947.36 | Disposition fee (if you do not purchase the Vehicle) $ N/A<br>Total $ N/A | $ 29447.36 |

### 7. Amount Due at Lease Signing or Delivery:
a. Capitalized Cost Reduction  $ 2584.14
b. First Monthly Payment  $ [illegible]
c. Refundable Security Deposit  $ N/A
d. Title Fees  $ [illegible]
e. Registration Fees  $ [illegible]
f. License Fees  $ N/A
g. Tax on Capitalized Cost Reduction  $ 135.10
h. Acquisition Fee  $ N/A
i. N/A  $ 675
j. N/A  $ N/A
k. N/A  $ N/A
l. N/A  $ N/A
m. Total  $ 3500.00

### 8. How the Amount Due at Lease Signing or Delivery will be Paid:
a. Net Trade-In Allowance  $ [illegible]
b. Rebates and Noncash Credits  $ [illegible]
c. Amount to be Paid in Cash  $ 3500.00
d. Total  $ 3500.00

### 9. Your Monthly Payment is determined as shown below:
a. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 46261.00) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13.  $ 48059.00
b. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost.  - $ 2584.14
c. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment.  = $ 45474.86
d. Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment.  - $ 29439.60

e. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.  = $ 16035.26
f. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts.  + $ 8090.64
g. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge.  = $ 24125.90
h. Lease Payments. The number of payments in your Lease.  + 36
i. Base Monthly Payment.  = $ 670.16
j. Monthly Sales/Use Tax.  + $ 50.60
k. N/A  + $ N/A
l. Total Monthly Payment ("Monthly Payment")  = $ 720.76

Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

10. Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use and for mileage in excess of _36000_ miles over the odometer mileage disclosed above, at the rate of _$0.25_ per mile.

11. Purchase Option at End of Lease Term. You have an option to purchase the Vehicle at the end of the Lease Term for $ 29439.60.

12. Other Important Terms. See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 13. Itemization of Gross Capitalized Cost

You will pay for the following items over the Lease Term, as part of your Monthly Payment:
a. Agreed Upon Value of the Vehicle  $ 46261.00
b. Taxes  + $ N/A
c. Initial Title, License and Registration Fees  + $ 100.00
d. Mechanical Breakdown Protection and/or Maintenance Agreement  + $ N/A
e. Credit Life and/or Disability Insurance  + $ N/A
f. N/A  + $ N/A
g. Outstanding Prior Credit or Lease Balance  + $ N/A
h. Acquisition Fee  + $ 700.00
i. N/A  + $ N/A
j. DLR ADMIN FEE  + $ 199.00
k. N/A  + $ N/A
l. MAINTENANCE  + $ 799.00
m. Gross Capitalized Cost  = $ 48059.00

### 14. Lease Term and Scheduled Maturity Date
The Lease Term of this Lease is _36_ months, and the Scheduled Maturity Date of this Lease is _06/06/2013_.

### 15. Required Insurance
You must provide the following insurance during the Lease Term with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required:
a) primary automobile liability insurance with minimum limits for bodily injury or death of
  i) $ 25000 for any one person, and
  ii) $ 50000 for any one accident, and
  iii) $ 10000 for property damage; and
b) physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.
See Section 24 for additional information.

You have provided us today with the following Insurance Information:
AAA A6-751735-1
Insurance Provider / Policy No. / Insurance Coverage Verification By: Dealer Employee
LITTLE ROCK 12901 NORTH FORTY DR, ST LOUIS MO 63141  (813)764-5000
Agent's Name / Address / Agent's Phone No.

### 16. Estimated Official Fees and Taxes  $ 4973.74
This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Monthly Payment (Section 9.l), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases. See Section 26 for additional information.

### 17. Vehicle Maintenance and Damage.
You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You are responsible for all damage to the Vehicle and for its loss, seizure or theft. You must tell us immediately if any of these events happen, and cooperate with your insurance company.

### 18. Warranty
If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the vehicle is used, it is not covered by a warranty unless identified below:
☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer
YOU ARE LEASING THIS VEHICLE "AS IS." THERE ARE NO WARRANTIES AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.
If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi or West Virginia, we do not exclude any implied warranty of merchantability or fitness for a particular purpose.

### 19. Optional Insurance and Other Products
You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless the appropriate box is checked, all information is filled in, you initial below, and you are accepted by the Provider. By your initials below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer).

☐ Optional Credit Life Insurance  $ N/A  Beginning Coverage
N/A
N/A  $ N/A  N/A
Provider / Premium / Lessee/Co-Lessee Initials

☐ Optional Credit Disability Insurance  $ N/A  Maximum Monthly Coverage
N/A  $ N/A
Provider / Premium / Lessee/Co-Lessee Initials

☐ Optional Mechanical Breakdown Protection  N/Miles / N/Months  Coverage
N/A  $ N/A
Provider / Premium or Charge / Lessee/Co-Lessee Initials

☐ Optional Maintenance Agreement
HENDAG INC  $ 799.00  [initials]
Provider / Premium or Charge / Lessee/Co-Lessee Initials

Total Premiums and Charges  $ 799.00

### 20. Complete Agreement or Modification
By your initials, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any change to this Lease must be in writing, and signed by you and by us.  [initials]

### 21. Agreement to Arbitrate
By initialing below, you agree that at the request of either you or us any controversy or claim (defined in Section 47 of this Lease) between you and us shall be determined by neutral binding arbitration. See Section 47 for further terms and conditions.  [initials]

---

PLEASE READ THE BACK SIDE FOR ADDITIONAL TERMS AND CONDITIONS

NOTICE TO LESSEE AND CO-LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE WHEN YOU SIGN IT.

By signing below, you acknowledge that: (1) You have read the entire Lease, including the back side; (2) You agree to all of the provisions of this Lease; (3) You have received a completely filled-in copy of this Lease; (4) This is a lease; you have no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this Lease.

Lessee Signature _[signature]_   Co-Lessee Signature _[signature]_

Notice Regarding Assignment. As part of a like-kind exchange program, Toyota Motor Credit Corporation ("TMCC") has engaged TGI Exchange, LLC ("TGI") as a qualified intermediary. Lessor is hereby notified that TMCC has assigned to TGI its rights (but not its obligations) in agreements to acquire the Vehicle.

The Lessor hereby accepts this Lease and assigns to Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") all rights, title and interest in the Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to LFS to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

Lessor _SUPERIOR LEXUS_ By _[signature]_ Title _[illegible]_ Date _05/01/2010_

PREVIOUS EDITIONS MAY NOT BE USED
LESSEE COPY

PLAINTIFF'S EXHIBIT A

## YOUR OBLIGATIONS DURING THIS LEASE

**22. Prohibited Uses of the Vehicle.** You agree that you will not, nor permit others to:

a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 24;
b. alter the Vehicle without our written consent. Any accessions to the Vehicle become our property;
c. subject the Vehicle to any lien, seizure or other involuntary transfer;
d. use the Vehicle to transport goods or people for hire;
e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
f. take the Vehicle outside the United States or Alaska (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance); or
g. allow anyone else to regularly use the Vehicle without our written consent.

**Assignment or subleasing by you of the Vehicle or Lease is strictly prohibited.**

**23. Title and Registration.** Legal title to the Vehicle will be in our name and the Vehicle will be registered as we direct. You must promptly pay all title, registration and license fees.

**24. Required Insurance.** We have the right to change the amounts of Required Insurance shown in Section 15. The limits we require may not be sufficient for your needs. See your insurance provider for more information. You may obtain the required coverages through any insurance company, agent, or broker you choose. The insurance policy must be acceptable to us, name Lexus Financial Services as additional insured and loss payee, and give us at least 10 days written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance.

**25. Charges for Late Payments.** If we do not receive a full Monthly Payment within 10 days after it is due, you must pay a late payment charge of 5% of the unpaid amount or $10, whichever is greater.

If this Lease is signed in Kansas, and if we do not receive a full Monthly Payment within 10 days after it is due, the late charge will be 5% of the unpaid amount or $25, whichever is less. If this Lease is signed in Maine, and if we do not receive a full Monthly Payment within 15 days after it is due, the late charge will be 5% of the unpaid amount or $10, whichever is less. If this Lease is signed in South Carolina, and if we do not receive a full Monthly Payment within 10 days after it is due, the late charge will be 5% of the unpaid amount or $10, whichever is less.

**26. Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, non-operable, experiences any mechanical problem, or does not perform satisfactorily. If you do not return the Vehicle by the Scheduled Maturity Date, you must continue to pay the Monthly Payment. However, continued payment does not mean you have our permission to keep the Vehicle. Payments will be applied in the following order: past due payments, current payment due, late charges, other amounts due under this Lease.

**27. Change in Address.** You must notify us in writing within 30 days of any change in your address.

**28. Official Fees, Taxes and Fines.** You must promptly pay all official fees and taxes related to this Vehicle and this Lease, including title, license and registration fees, and sales, use, excise and personal property taxes. You must also promptly pay any fines incurred on the Vehicle such as traffic or parking tickets.

Some bills for official fees and taxes may be sent to you for payment. Other bills may be paid by us on your behalf and we will charge you the amount paid. You must pay all fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended. We may charge you an estimated amount for the remaining fees and taxes at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess.

We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less any amounts due under this Lease, to you.

We may pay any title, registration, license fee, tax or fine which you fail to pay, and charge you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.

**29. Default and Loss of the Vehicle.** You will be in default if:

a. you fail to make any payment when it is due; or
b. you fail to keep any other agreement in this Lease; or
c. you provided false or misleading information when applying for this Lease; or
d. you become the subject of a bankruptcy or insolvency proceeding; or
e. the Vehicle is lost, stolen, seized, or damaged beyond reasonable repair.

If you are in default we may do any of the following after giving any legally required notices, and after expiration of any legally required cure or reinstatement periods:

i. terminate this Lease and your right to use the Vehicle;
ii. take possession of the Vehicle from your property or elsewhere, in any manner not prohibited by law;
iii. require you to pay the amounts set forth in Section 33;
iv. pursue any other remedy allowed by law; and
v. require you to pay all of our expenses for taking these actions, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.

If this Lease is signed in Colorado, Kansas, North Carolina, Oklahoma or South Carolina, the attorneys' fees will be limited to fifteen percent of the amount you owe under Section 33, unless a court awards a higher amount. If this Lease is signed in Maine or Ohio, no collection costs, legal costs or attorneys' fees will be charged to you, unless a court awards them to us.

## ENDING YOUR LEASE

**30. Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 29) and you must pay us the amounts set forth in Section 29(v) and Section 33.

**31. Early Termination by You.** If you are not in default, you may terminate your lease at any time prior to the end of the Lease, provided you do so in accordance with the terms contained in Sections 32 or 33 of this Lease.

**If you terminate this Lease early and do not elect, at the time you turn in your Vehicle, the Remaining Payments Liability set forth in Section 32, you will be liable for the Standard Early Termination Liability set forth in Section 33 below.**

**32. Remaining Payments Liability.** If you are not in default, you have **the option to terminate your Lease at any time if you return the Vehicle to us, at the location we specify and pay us, upon demand,** the following amounts:

a. any Monthly Payments that have become due, and are unpaid at termination; plus,
b. any remaining Monthly Payments from date of termination to the end of this Lease; plus,
c. any other amounts you owe under this Lease; plus,
d. any charges for Excessive Wear and Use and excess mileage (Sections 10 and 36); plus,
e. any official fees or taxes charged in connection with the Lease termination; minus,
f. any remaining Refundable Security Deposit (Section 37) and any amounts we receive from cancelled Optional Insurance or Other Products (Section 39).

**33. Standard Early Termination Liability.** If you are not in default, **you have the option to terminate your Lease at any time if you return the Vehicle to us, at a location we specify, and pay us, upon demand,** the following amounts:

a. any Monthly Payments that have become due, and are unpaid at termination; plus,
b. an Early Termination Charge equal to the difference, if any, between the "Adjusted Lease Balance" and the "Fair Market Value" (as defined below); plus,
c. any other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 36); plus,
d. any out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus,
e. any official fees or taxes charged in connection with the Lease termination; minus,
f. any remaining Refundable Security Deposit (Section 37), or refund we receive from Optional Insurance or Other Products (Section 39).

**The "Adjusted Lease Balance" is calculated** by adding the remaining Base Monthly Payments not yet due and the Residual Value, then subtracting the unearned portion of the Rent Charge. The unearned portion of the Rent Charge is calculated according to the "constant yield" method.

**The "Fair Market Value"** is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by an appraisal of the wholesale value of the Vehicle, which you may obtain, at your own expense, from a professional independent appraiser agreed to by us. If you obtain such an appraisal, the appraised value will be used as the Fair Market Value. The appraisal must be obtained by you within 10 days after the Vehicle is returned to us.

If the Vehicle is subject to a total loss or theft resulting in a total loss, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required Insurance. If there are no insurance proceeds the Fair Market Value will be zero.

If this Lease is terminated as a result of a total loss or a theft resulting in a total loss of the Vehicle and you have maintained the Required Insurance set forth in Section 15, we will waive the Early Termination Charge set forth in Section 33b, after we receive the insurance proceeds and you have paid any deductible amounts.

**34. Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and instructed us not to release the Vehicle to you). **The price to purchase the Vehicle at the Scheduled Maturity Date is the** Purchase Option Price shown in Section 11, plus 34a, 34b and 34c, below. The price to purchase the Vehicle during the Lease is:

a. any Monthly Payments that have become due, or other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 36); plus,
b. any official fees and taxes, or documentary fees charged in connection with the purchase; plus,
c. any amounts necessary to meet any legal selling requirements; plus,
d. the Adjusted Lease Balance as defined in Section 33.

As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor and Lessee are hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in any agreement for the sale of the Vehicle at lease termination.

**35. Obligations If You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at the location we specify, and pay us, upon demand, the following amounts:

a. any Monthly Payments or other amounts due under this Lease; plus,
b. any official fees or taxes charged in connection with the Lease termination; plus,
c. any Excessive Wear and Use charges disclosed in Section 36; plus,
d. any excess mileage charge disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

**36. Excessive Wear and Use Charges.** If you do not purchase the Vehicle at the scheduled Maturity Date, or if you elect to terminate your Lease in accordance with Section 32, you must pay us the estimated cost to repair damage to the Vehicle which is excessive wear and use. Excessive wear and use includes, but is not limited to:

a. inoperative mechanical and electrical parts;
b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle in accordance with Section 17;
c. damage to the body, lights, trim or paint;
d. damaged, broken or tinted glass;
e. torn, damaged or stained interior;
f. damage from flood, water, hail or sand;
g. damage from removal of equipment or signs placed on the Vehicle;
h. missing equipment, parts and accessories, including missing keys or remote entry devices; or
i. tires with less than 3/32 inch of tread remaining, or any tire not part of a matching set of 5 tires (or 4 with an emergency spare if the Vehicle was originally equipped with one).

## ADDITIONAL INFORMATION

**37. Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. If you elect to purchase your Vehicle, your security deposit may be applied by us to the amount you owe to purchase your Vehicle. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase or profits will be paid to you on the security deposit.

**38. Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to LFS and you agree to make all payments to LFS.

**39. Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

**40. Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

**41. Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information.

**42. Liability.** Lessee and Co-Lessee are jointly and severally liable. If there is both a Lessee and Co-Lessee signing this Lease, we can release, waive or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

**43. Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on the Lease, unless you give us a different address in writing.

**44. Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of the Lease will be enforceable.

**45. No Waiver by Us.** If we delay or refrain from exercising our rights under this Lease, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

**46. Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

## ARBITRATION

**47. Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, and the following Covered Parties: Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing. However, only a court (and not an arbitrator) shall determine the validity and effect of this Provision's ban on class actions, classwide arbitrations and similar proceedings (which appears in bold type below) (the "Class Action Waiver"). Any arbitration shall be administered by either of the following Administrators selected by the party initiating the arbitration: National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, http://www.arb-forum.com, or the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, http://www.adr.org; provided that no arbitration may be administered without the consent of all parties to the arbitration by any organization that has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Provision. In all cases, the arbitrator must be a lawyer with at least 10 years of experience or a retired judge. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"); (ii) the Administrator's rules and procedures in effect at the time the claim is filed; and (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not by any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. The Arbitrator shall follow applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Administrator or Arbitrator or if you believe that such fees are or will be prohibitively expensive or excessive, we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In any event, if applicable law requires us and the Covered Parties to pay or reimburse you for any such fees, such law will control. Each party shall bear the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or the Lease gives a party the right to recover any of those fees from the other party. **We, the Covered Parties and you are prohibited from participating in a class action or private attorney general action in court or classwide arbitration with respect to any claims we, the Covered Parties or you have asserted against one another or other beneficiaries of this Provision. There should also be no joinder or consolidation of parties, except for multiple parties to this Lease.** In the event of a conflict or inconsistency between this Provision, on the one hand, and the applicable arbitration rules of the Administrator or the other provisions of the Lease on the other hand, this Provision shall govern. If any portion of this Provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the other provisions of this Provision or this Lease; provided however, that if the Class Action Waiver is deemed invalid, then this entire Provision shall be null and void, subject to the right of any party to appeal the determination of invalidity with respect to the Class Action Waiver. You and we retain rights to self-help remedies, such as repossession of the Vehicle. (However, the other party against whom the self-help remedy is sought may initiate an action in court only to enjoin the party from using a self-help remedy. No monetary relief may be sought in such a court action.) You also will not be subject to this Provision for any individual claim brought by you in small claims court or your state's equivalent court, unless such claim is transferred, removed or appealed to a different court. With respect to any claims covered by this Provision, a party who has asserted a claim in a lawsuit or in any action for replevin in court may elect arbitration, or may be required to arbitrate, with respect to any claim(s) subsequently asserted in that lawsuit by that party or any other party(ies). IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ADMINISTRATOR; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT FOR A LIMITED RIGHT TO APPEAL AS PROVIDED IN THE FAA. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION. This Provision is made pursuant to a transaction in interstate commerce, and shall be governed by the FAA. Judgment upon the award may be entered in any court having jurisdiction. This Provision will survive your full payment of the Lease; our sale or transfer of the Lease; any repossession of the Vehicle; and your (or our) bankruptcy.



**LEXUS**
**FINANCIAL SERVICES**
P.O. BOX 9490
CEDAR RAPIDS, IA 52409-9490

ACCOUNT NUMBER: 03-0412-84798
DESCRIPTION OF VEHICLE: 2010 LEXUS RX350
VEHICLE IDENTIFICATION NUMBER: 2T2BK1BA6AC064917

05/14/13

MB 01 000489 47592 B 4 A
TERRILL-JONES, ROBIN
2211 N 88TH ST
KANSAS CITY KS 66109-1946

Please be sure this address appears in the return envelope:

LEXUS FINANCIAL SERVICES
P.O. BOX 9490
CEDAR RAPIDS, IA 52409-9490

Dear TERRILL-JONES, ROBIN:

Thank you for returning your leased vehicle to SUPERIOR LEXUS on 4/15/13.

Our records indicate that your account may have outstanding charges or the vehicle was assessed Excess Wear and Use or Excess Mileage charges. Please see the accounting statement shown below.

| | | | |
|---|---|---|---|
| Unpaid Lease Payment(s): | | $ | |
| Unpaid Late Charges: | | $ | |
| Unpaid Miscellaneous Receivables: | | $ | |
| Excessive Wear and Use: | $ | | |
| LESS EWU Protection Plan Waiver: | $( ) | | |
| Excessive Mileage Charge: | $ 2,277.25 | | |
| (45,148 miles - 36,039 miles allowed = 9109 miles @ $0.25 per mile) | | | |
| Disposition Fee: | $ | | |
| Subtotal | $ 2,277.25 | | |
| Sales Tax at 8.925 % | $ 203.24 | | |
| Total | | $ | 2,480.49 |
| Other: _____ | | $ | |
| LESS Amount Collected When Vehicle Returned: | | $( | ) |
| LESS Security Deposit / Reconditioning Reserve: | | $( | 0.00 ) |
| **Total Amount Due:** | | $ | **2,480.49** |

Please pay the Total Amount Due using the enclosed envelope. If you have any questions please call us at (800) 874-7050 between 6 a.m. and 5 p.m., Pacific Time, Monday through Thursday, 6 a.m. and 4 p.m., Pacific Time, Friday. Thank you again for your valued business.

Sincerely,

Lexus Financial Services



PLAINTIFF'S EXHIBIT B

We may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Lexus Financial Services is the authorized attorney-in-fact and servicer for Toyota Lease Trust (TLT).     DMS 6152 (11/12)

PO Box 923748  
Peachtree Corners, GA 30010-3748  
RETURN SERVICE REQUESTED  
June 10, 2014

VITAL RECOVERY SERVICES, INC  
PO Box 923748  
Peachtree Corners, GA 30010-3748  
(866)312-5580  

Original Creditor: Toyota Motor Credit Corp.  
Current Creditor: Toyota Motor Credit Corp.  
New Account #: 016708961  
Original Account#: 80000500847980001  
Last Payment Date: August 17, 2013  
Total Balance Due: $1074.16  
0001            016708961

00002749 TO1

ROBIN TERRILL-JONES  
2211 N 88TH ST  
KANSAS CITY KS 66109-1946

IMPORTANT NOTICE:  
PLEASE RESPOND

## YOUR ACCOUNT HAS BEEN PLACED WITH US FOR COLLECTION

Dear ROBIN TERRILL-JONES:

VITAL RECOVERY SERVICES, INC is now servicing the EXCESS WEAR & USE account noted above that is held by Toyota Motor Credit Corp.. They have placed it with us to collect it for them.

Send your full payment with the coupon below or call us. We would like to discuss the matter with you.

Unless you notify Vital Recovery Services, Inc. within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, Vital Recovery Services, Inc. will assume this debt is valid. If you notify Vital Recovery Services, Inc. in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, Vital Recovery Services, Inc. will obtain verification of the debt or obtain a copy of a judgment and will mail you a copy of such judgment or verification. If you request of Vital Recovery Services, Inc. in writing within 30 days after receiving this notice Vital Recovery Services, Inc. will provide you with the name and address of the original creditor, if different from the current creditor.

For further information or to pay by phone, please call Vital Recovery Services, Inc. at (866)312-5580.

This letter is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose. This communication is from a debt collector.

To make a payment online go to: https://pay.vitalrecovery.com/  
Sign on using payment id: 01670896138

A fee may be charged for check or credit card payments made by phone or web.

---

Make check payable to:  
VITAL RECOVERY SERVICES, INC

6112014

NEW ACCT #: 016708961  
TOTAL BALANCE DUE: $1074.16

Amount Paid:

Home Phone: _____  
Daytime Phone: _____

0001 TO1      016708961

VITAL RECOVERY SERVICES, INC  
PO BOX 923747  
PEACHTREE CORS., GA 30010-3747

ROBIN TERRILL-JONES  
2211 N 88TH ST  
KANSAS CITY KS 66109-1946

☐ Check here if address has changed.  
   Please note changes on reverse side.


PLAINTIFF'S EXHIBIT

**CERTIFIED MAIL**

Consumer Legal Clinic, LLC
74...
Kansas City, Kansas 66101

7014 1820 0001 6275 4112

$7.610
US POSTAGE
FIRST-CLASS
062S0006727656
66101



**TransUnion LLC**
RA: The Prentice-Hall Corporation System, KS, Inc.
2900 SW Wanamaker Drive, Suite 204,
Topeka, Kansas 66614



08 MAR 2015
KANSAS CITY 64